UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-00898-JAR |
| | ) | |
| EILEEN RAMEY,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jacob Johnson's pro se Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody. Johnson filed his initial petition on June 8, 2015. (Doc. No. 1) Respondent filed a Response on September 2, 2015. (Doc. No. 9) On April 14, 2016, Johnson filed an amended § 2254 petition.[2] (Doc. No. 15) On September 5, 2017, Johnson filed a Motion for Grant of § 2254 Habeas Corpus and Release (Doc. No. 16), contending that Respondent's failure to respond to his amended § 2254 petition was grounds for his immediate release. The Court directed Respondent to respond to Petitioner's petition by September 29, 2017. (Doc. No. 17) When no response was filed, Johnson again moved for immediate release. (Doc. No. 18) The Court directed Respondent to respond to Johnson's amended petition by December 1, 2017. (Doc. No. 19) On December 1, 2017,

---

[1] During the pendency of the Petition, Eileen Ramey became the warden at Jefferson City Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Eileen Ramey as the Respondent and remove Jay Cassady's name.

[2] Because an amended petition completely replaces the original petition, see, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation, 396 F.3d 922, 928 (8th Cir. 2005), Johnson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Doc. No. 1) will be denied as moot.

1

Respondent filed a response to Johnson's Amended Petition. (Doc. No. 20) In reply, Johnson filed a motion for immediate release on December 14, 2017. (Doc. No. 21)

I.  **Background**

The Missouri Court of Appeals summarized the evidence regarding this case as follows:[3]

On the evening of August 26, 2008, Angela Allen ("Allen") was at her apartment located at 3001 Texas Avenue with her three children, ages 9, 8 and 3. Also in the apartment at the time was Allen's neighbor Tanisha Ewing ("Ewing"), Ewing's young niece and cousin, and Allen's friend, Charilyn Curlee ("Curlee"). In response to a knock at the door, Ewing cracked open the front door to see who was there. Outside, she saw three black men, two at the door and one off to the side seemingly serving as a look-out. She immediately tried to close the door but the two men at the door forced their way past her and into the apartment. One of the men, later identified as [Johnson], was carrying a shotgun.

[Johnson] held the shotgun to Ewing's stomach upon entering but turned the gun on Curlee shortly thereafter and told everyone to move to one side of the room. [Johnson] then put the gun to Allen's head and demanded any valuables she had on the premises. This threat was interrupted, however, as [Johnson] placed the shotgun to the head of Allen's daughter, who had been crying, and told Allen "to tell her to shut the fuck up" or he would kill the child. After Allen covered the child's mouth, [Johnson] put the gun back to Allen's head and resumed his demand for valuables. Ultimately, various items of jewelry were taken from Allen and, at the behest of his accomplice in the apartment, [Johnson] turned to leave the apartment. As he left, [Johnson] told the victims that he would shoot up into the apartment if anyone moved or called the police. The two men then left and the police were called a few minutes thereafter.

The following day, August 27, 2008, Jacqueline Warnack ("Warnack") informed a friend that she had finally received an insurance settlement check she had been waiting on and that she would be cashing the check. That evening, Warnack was at her apartment at 3689 Montana Street with her 11-year old son and her mother, Grace Hornbeck ("Hornbeck"). Warnack's son answered a knock at the door and, after peering outside, announced to his mother that it was a "white girl" at the door. Expecting the friend she had spoken with earlier, Warnack instructed her son to open the door. As he did so, a man later identified as [Johnson], pushed into the apartment with two other men. [Johnson] was carrying a shotgun that was partially concealed so that only the barrel was visible.

Upon entering, [Johnson] smacked Warnack in the face and demanded "the money." Warnack yelled back to Hornbeck and that caused [Johnson] to race back to the bedroom

---

[3] The state court's factual findings are presumed to be correct, and Johnson bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

where Hornbeck was located. [Johnson] leveled the gun at Hornbeck's face and stated, "Give me the money, bitch." Hornbeck insisted she did not have any money and so [Johnson] put her in a closet and pushed a dresser in front of the door.

While [Johnson] was back in the bedroom threatening Hornbeck, one of his accomplices took Warnack's car keys and went outside. The third man remained inside and held a knife to the throat of Warnack's son in order to stop his screaming. Warnack then remembered the settlement money in her purse and she gave it to the man holding her son. The man yelled to [Johnson], "Cuz, I got it," and the two men then left the apartment together.

On September 22, 2008, Curlee, one of the victims in the Texas robbery, witnessed a man riding his bicycle that she believed was the man with the shotgun during the robbery. She informed nearby police officers of the man on the bicycle, who arrested the bicycle rider who turned out to be [Johnson].

Following his arrest, [Johnson] was placed in a live lineup along with three police officers. Both Curlee and Allen identified [Johnson] from the lineup as the person involved in the robbery who had wielded the shotgun. Ewing was unavailable to attend the live lineup. The police asked [Johnson] to switch positions in the lineup and then took a photograph of the lineup. Ewing later identified [Johnson] from that photo.

The photo of the lineup was then given to the detective in charge of the Montana robbery who showed it to both Warnack and Hornbeck. Warnack identified [Johnson] in the photograph and stated she was "100% sure" that he was the man with the shotgun in the Montana robbery. The detective then told Warnack that she had identified the correct person. Hornbeck was unable to positively identify [Johnson] in the photo, but did identify him after seeing him in person at trial.

(Respondent's Exhibit E at 2-4)

The trial court joined the charges from the Montana and Texas robberies: two counts of robbery in the first degree in violation of § 569.020, RS Mo. 2000 (Counts I and VI); one count of attempted robbery in the first degree in violation of § 564.011, RS Mo. (Count VIII); four counts of armed criminal action in violation of § 571.015, RS Mo. (Counts II, IV, VII, and IX); two counts of burglary in the first degree in violation of § 569.160, RS Mo. (Counts III and X); and two counts of unlawful use of a weapon in violation of § 571.030, RS Mo. (Counts V and XI). On June 30, 2010, a jury convicted Johnson on all counts. On August 6, 2010, Johnson was sentenced, as a persistent felony offender, to three consecutive life sentences plus an additional

164 years in the custody of the Missouri Department of Corrections. Johnson is presently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri.

Johnson appealed his sentence and judgment, contending the trial court erred by: (i) overruling his motion for severance and in failing to sever the charges of Counts I - V (the Texas robbery) from Counts VI – XI (the Montana robbery); (ii) overruling his motion for judgment of acquittal for insufficient evidence at the close of the evidence for Counts V – XI; and (iii) overruling his motion to suppress both in-court and out-of-court identification evidence. Johnson's convictions and sentence were affirmed on appeal. State v. Johnson, 353 S.W.3d 98 (Mo. Ct. App. 2011).

Thereafter, Johnson filed a timely Rule 29.15 motion for post-conviction relief, claiming: (i) ineffective assistance of trial counsel for failing to call a material witness, Janet M., at trial, failing to present evidence of a 911 call, and failing to sufficiently explain to him his right to testify; and (ii) ineffective assistance of appellate counsel for failing to challenge the trial court's decision to overrule his motion to suppress statements made by Johnson before trial. (Respondent's Exhibit F at 19-47) The motion was denied without an evidentiary hearing. (Id. at 48-57) The motion court's denial was affirmed on appeal. Johnson v. State, 432 S.W.3d 275 (Mo. Ct. App. 2014).

On June 8, 2015, Johnson filed his initial Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody, targeting the joinder/severance issue, admission of identification evidence, and ineffective assistance of counsel. (Doc. No. 1) On April 14, 2016, Johnson filed an amended § 2254 petition raising the following eight grounds:

(1) the appellate court erred in failing to overturn his conviction on the basis of the trial court's improper joinder and failure to sever the charges in Counts I – V from Counts X – XI;

4

(2) the trial court erred in denying his motion to suppress certain out-of-court identification evidence that was presented at trial;

(3) the appellate court erred in failing to reverse the trial court's failure to sever the charges in Counts I – V from Counts X – XI;

(4) the appellate court erred in failing to reverse the trial court's decision to admit certain in-court and out-of-court identification evidence;

(5) the trial court erred in admitting the in-court identification evidence;

(6) the trial court erred in admitting testimony of a prior bad act that Johnson was neither charged with nor convicted of;

(7) the trial court erred by admitting certain hearsay testimony; and

(8) appellate counsel was ineffective for failing to argue on appeal that he was convicted on the basis of insufficient evidence.

(Doc. No. 15)

## II. Standard of review

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a

different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

### III. Discussion

**A. Grounds 1 and 3**

In Ground 1, Johnson claims his right to due process and a fair trial were violated when the appellate court determined that the "trial court did not err in overruling [his] motion for severance and in failing to sever" Counts I-V from Counts VI-XI. (Amended Petition at 15) In Ground 3, Johnson claims the appellate court violated his right to due process, equal protection, and a fair trial when it "denied [his] direct appeal in regards to the issue of severance and joinder." (Amended Petition at 16) Johnson argued on direct appeal that joinder of the Montana and Texas robberies was improper because the manner of the crimes were dissimilar and showed no common scheme or plan. (Respondent's Exhibit C at 23-27) He further argued the failure to sever the Texas robbery charges from the Montana robbery charges prejudiced him because the identification evidence for the Montana robbery was "comparatively weak" and the jury likely relied upon the Texas robbery identification evidence for both robberies. (Id. at 27-29)

Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder may be a constitutional violation if it prevents a defendant from obtaining a fair trial. See United States v. Mann, 701 F.3d 274, 290 (8th Cir. 2012) (citing United States v. Lane, 474 U.S. 438, 446 n. 8 (1986)). Similarly, to obtain habeas relief for failure to sever, a petitioner must show "the failure to grant severance rendered his trial 'fundamentally unfair.'" Wharton-El v. Nix, 38 F.3d 372, 374–75 (8th Cir. 1994) (quoting Hollins v. Department of Corrections, 969 F.2d 606, 608 (8th Cir. 1992)).

The state appellate court carefully considered Johnson's arguments in light of applicable law and found the victims, offenses, locations, and tactics used in both robberies were

7

sufficiently similar to render joinder proper as a matter of law. (Respondent's Exhibit E at 5-6) This finding is presumed correct under § 2254(d). See Nix, 38 F.3d at 374–75.

The appellate court further determined that the refusal to sever did not substantially prejudice Johnson or render his trial "fundamentally unfair." (Respondent's Exhibit E at 6-7) First, the record disputed his contention that the identification evidence was "weak" given that one eyewitness, Warnack, stated she was "100% sure" in her identification of Johnson, and another eyewitness, Hornbeck, positively identified him at trial. This, according to the appellate court, was a sufficient basis from which the jury could derive its verdict. (Id. at 7) Second, the relevant facts from each offense were not complex and the proof offered on each charge was distinct and uncomplicated:

> At trial, the proof offered was easily followed because each of the State's witnesses testified only to the details of one of the robberies. Moreover, the jury instructions were clear in laying out separate instructions for each count, with the first five counts pertaining only to the Texas robbery and the last six only pertaining to the Montana robbery. . . There is nothing in the record that suggests the jury was unable to distinguish the evidence from the Montana and Texas robberies.

(Id.) Moreover, the jury was instructed to consider each count separately, see Jury Instruction 16, and juries are presumed to follow their instructions. Mann, 701 F.3d at 290–91 (citing Zafiro v. United States, 506 U.S. 534, 540 (1993)).

Accordingly, the appellate court's decision affirming the trial court's denial of Johnson's motion for severance was neither contrary to nor involved an unreasonable application of clearly established Federal law as determined by the Supreme Court. For these reasons, the claims raised in Grounds 1 and 3 are denied.

### B. Grounds 2 and 5

In Ground 2, Johnson claims the trial court's decision "to overrule [his] motion to suppress the identification evidence" with respect to Counts VI-XI violated his constitutional

rights to due process and a fair trial because the admitted evidence was "suggestive and created a substantial likelihood of misidentification." (Amended Petition at 15-16) In Ground 5, Johnson alleges the trial court violated his constitutional rights to due process, equal protection, and a fair trial "by allowing witness, Grace [Hornbeck], to identify [him] in court," because he was seated at the defense table and was one of only two African American males in the courtroom, the other being a juror. (Id. at 17-18) Johnson raised these issues on direct appeal, arguing that: (1) the physical line-up procedures were unduly suggestive because the tops of the participants' pants were visible and he was the only one seen wearing denim; (2) the photographic identification was unduly suggestive because it showed the other participants looking calm, while he appeared anxious, and because the detective knew Johnson's identity and affirmed that to Warnack after she identified him; and (3) Hornbeck was allowed to identify him at trial despite not being able to pick him out of the photo lineup. (Respondent's Exhibit C at 37-46)

Suggestive pretrial procedures, without more, do not require a finding that due process rights have been violated. The issue is whether the pretrial identification procedures created a "substantial likelihood of irreparable misidentification," or whether the in-court identification had a reliable and independent basis. Cotton v. Armontrout, 784 F.2d 320, 322 (8th Cir. 1986) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 116 (1977)). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." United States v. Murdock, 928 F.2d 293, 297 (8th Cir. 1991) (quoting Manson, 432 U.S. at 114; Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). Although the ultimate question of the constitutionality of admitting an in-court identification is not governed by § 2254, the questions of fact that

9

underlie this conclusion are governed by the statutory presumption. Graham v. Solem, 728 F.2d 1533, 1542 (8th Cir. 1984).

The appellate court carefully considered Johnson's arguments in light of applicable law and found that he failed to demonstrate that the pretrial procedures were impermissibly suggestive. The court noted the reasonable efforts taken by police to select line-up participants who were physically similar to Johnson. Two of the participants wore white t-shirts like Johnson, while the other wore a black t-shirt, and a table was overturned to hide the fact that the other participants wore dark pants and Johnson wore denim shorts. (Respondent's Exhibit E at 12) Further, nothing in the record suggested the detective presenting the line-up picture to Warnack communicated to her, either unconsciously or otherwise, who she should pick out from the picture. It was only after Warnack identified Johnson based on her recollection of the robbery that the detective made his confirmatory statement. (Id. at 13) Because Johnson failed to demonstrate that the out-of-court identification procedures were impermissibly suggestive, the appellate court declined to review the reliability of the identification evidence. (Id.)

With regard to Hornbeck's identification of Johnson, the Eighth Circuit does not require in-trial identifications to be preceded by pretrial lineups. United States v. Wade, 740 F.2d 625, 628 (8th Cir. 1984); see also United States v. Ostertag, 619 F.2d 767, 771 (8th Cir. 1980) (no constitutional right to a pretrial lineup). Thus, the only issue is whether Johnson's presence at the defense table, combined with his being one of two African–Americans in the courtroom at the time of the identification, constituted impermissibly suggestive procedures. Graham, 728 F.2d at 1541. In U.S. v. Murdock, the Eighth Circuit concluded that an identical in-court identification procedure was not impermissibly suggestive. There, the court found it significant to note that Murdock did not request special seating or object to the ethnic composition of the courtroom at

the time of the identification. Moreover, the witnesses' identifications were open to attack on cross-examination. Murdock, 928 F.2d at 297.

Here, Hornbeck testified that when she was presented with the photo lineup by the detective handling the Montana robbery, she could not identify anyone in the photograph. However, she told the detective that if she was given a person-to-person lineup, she could identify the robber. (Respondent's Exhibit A at 317; 321-22) At trial, Hornbeck identified Johnson as the man with the gun who forced her into the closet. (Id. at 317-319) As in Murdock, Johnson did not request special seating or object to the ethnic composition of the courtroom at the time of the identification, and Hornbeck's identification of Johnson was subject to attack on cross-examination. Therefore, the procedure was not impermissibly suggestive. Even if the procedure was impermissibly suggestive, under the totality of the circumstances, there was no substantial likelihood of misidentification. Hornbeck had a substantial amount of time to view the robber at the time of the crime. Prior to being forced into the closet, she was standing face to face with him "for a couple of minutes," looking solely at his face and at the gun. (Respondent's Exhibit A at 320-21) Thus, Hornbeck's in-trial identification was reliable under the totality of the circumstances. See Ford v. Armontrout, 916 F.2d 457 (8th Cir. 1990) (impermissibly suggestive pretrial identification did not make in-court identification unreliable where victim had ample opportunity to view defendant, and where victim's description of her assailants was accurate and where she did not hesitate in her identification of defendant).

Accordingly, the trial court's decision to admit the identification evidence was neither contrary to nor involved an unreasonable application of clearly established Federal law as determined by the Supreme Court. The claims raised in Grounds 2 and 5 are denied.

**C. Ground 4**

Johnson also claims the appellate court violated his rights to due process and a fair trial when it "ruled that the trial court did not err in overruling his motion to suppress the identification evidence presented at trial." (Amended Petition at 17) As discussed above, the admission of the identification evidence was in accord with Federal law as determined by the Supreme Court. Therefore, the appellate court's decision to affirm that ruling is likewise consistent with Federal law. The appellate court carefully considered Johnson's arguments together with the applicable law and determined that the trial court did not err in denying his motion to suppress. Accordingly, the claim raised in Ground 4 is denied.

**D. Ground 6**

Johnson claims the trial court violated his constitutional right to a fair trial "by allowing the state to question defense witness, [Christy] Young, about a phone conversation she had with [him]" that "contain[ed] prior bad acts that [he] was [neither] charged with nor convicted of." (Amended Petition at 18) This claim was raised for the first time in Johnson's amended § 2254 petition, which was filed beyond the AEDPA's one-year limitations period, § 2254(d)(1). Claims in an amended habeas petition filed after the expiration of the AEDPA's limitations period may not be considered if they do not "relate back" to the date of the original habeas petition. Mayle v. Felix, 545 U.S. 644, 655 (2005) (discussing an amended petition under prior Federal Rule of Civil Procedure 15(c)(2), the predecessor of what is now Rule 15(c)(1)(B)); accord McKay v. Purkett, 255 F.3d 660 (8th Cir. 2001) (per curiam) (same, and finding no abuse of discretion in the district court's dismissal of an amended habeas petition as untimely when the claims in that petition did not relate back to the claims in the original, timely-filed habeas petition). Claims relate back to the original claims when the amended claims arise out of the "conduct, transaction,

or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

To relate back in federal habeas proceedings, the amended claims must be of the same "time and type" as the original claims, and the original and amended claims must be "tied to a common core of operative facts." Mayle, 545 U.S. at 650, 664. In Mayle, the Supreme Court specifically held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. Claims do not relate back "simply because they relate to the same trial, conviction, or sentence as a timely filed claim." Id. at 662.

Here, Johnson's claim does not arise from the same conduct or occurrence set out in the original petition. Johnson's initial petition – which focused on identification evidence, the joinder/severance issue, and an allegation of ineffective assistance of counsel – makes no mention of his phone call with Christy Young. As the facts underlying Ground 6 "differ in both time and type" from those set forth in the original petition, Mayle, 545 U.S. at 650, the claim in Ground 6 does not relate back to the filing of the original petition and is untimely.

Even if Ground 6 was not untimely, it has been procedurally defaulted because Johnson did not raise it in his direct appeal or at any stage of his post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Further, Johnson has not demonstrated adequate cause to excuse the default. Coleman, 501 U.S. at 750.

Moreover, even if Ground 6 was not procedurally defaulted, it fails on the merits. Presumably, Johnson is objecting to testimony provided by Young suggesting witness tampering. ("I need someone to go to [3001 Texas] and talk to that girl" and "If they don't come to court, it

will be dropped.") (Respondent's Exhibit A at 421-23) Young went on to testify, however, that she believed Johnson was asking for someone to go talk to one of his old girlfriends, not the victims of the robbery, and that she never went and talked to those people. (Respondent's Exhibit A at 424-25)

"No due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived the defendant of fundamental fairness.'" McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)). After reviewing the totality of the facts in this case, the Court finds that admission of Young's testimony did not "fatally infect" the trial such that it could be considered fundamentally unfair, especially considering the other evidence against him. Even if Young's testimony had been excluded, there is no guarantee the result of the trial would have been different. Therefore, the claim raised in Ground 6 is denied.

### E. Ground 7

Johnson claims the trial court violated his rights to due process and a fair trial "by allowing Jacqueline Warnack to testify to statements made to her in a phone call by a woman named Janet." (Amended Petition at 18) He alleges that Warnack's statements were hearsay and in violation of the Confrontation Clause. (Id.) Johnson's original petition did not allege error or plead any facts relating to Warnack's testimony. Like Ground 6, Ground 7 differs in both "time and type" from the grounds set forth in the original petition. Mayle, 545 U.S. at 650. Accordingly, the claim in Ground 7 does not relate back to the original petition and is untimely.

Even if Ground 7 was not untimely, it is procedurally defaulted because Johnson did not raise it in his direct appeal or at any stage of his post-conviction proceedings. See Sweet v. Delo,

125 F.3d 1144, 1149 (8th Cir. 1997). Further, Johnson has not demonstrated adequate cause to excuse the default. Coleman, 501 U.S. at 750.

Moreover, even if Ground 7 was not procedurally defaulted, it fails on the merits. Warnack testified she received a call from Janet requesting to stay the night at her house on the evening of the robbery. (Respondent's Exhibit A at 277-78) Warnack further testified there was a knock on her door shortly after the call. (Id. at 278) Believing it to be Janet, she instructed her son to open the door. (Id.) The trial court overruled Johnson's counsel's hearsay objection and allowed Warnack's testimony to explain why she answered the door. (Id. at 277) Such determination was reasonable. "The Confrontation Clause prohibits an out-of-court statement only if it is admitted for its truth." Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016). Because Janet's statement was not admitted for the truth of the matter, the admission of her testimony did not violate the Confrontation Clause. Nor has Johnson provided any basis for concluding that the admission of the statement rendered his trial fundamentally unfair. See Ford v. Wainwright, 477 U.S. 399, 424 (1986) ("[F]undamental fairness is the hallmark of the procedural protections afforded by the Due Process Clause"). The claim raised in Ground 7 is denied.

**F. Ground 8**

Johnson claims he was denied effective assistance of counsel "when appellate counsel failed to act with the customary skill that a competent attorney would have given in similar circumstances." (Amended Petition at 19) Specifically, Johnson faults his appellate counsel for failing to "brief, present and argue on direct appeal that there was insufficient evidence to convict [him]." (Id.)

Appellate counsel does not have a duty "to advance every argument, regardless of merit, urged by the defendant." Evitts v. Lucey, 469 U.S. 387, 382 (1985). Moreover, counsel has

discretion to abandon losing issues on appeal. Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996) (internal citation omitted). To show that his attorney was deficient in failing to raise the claim on appeal, Johnson must show a reasonable likelihood that, but for his attorney's error, the result on appeal would have been different. Id. (citing Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir.1987)). Absent contrary evidence, the failure to raise a claim is assumed to be an exercise of "sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (internal citation omitted).

In Johnson's Motion for Judgment of Acquittal Notwithstanding the Verdict, or, in the Alternative, Motion for New Trial, his trial counsel challenged the sufficiency of the evidence for conviction, but pointed to no evidence in the record in support of this claim. (Respondent's Exhibit B at 108) The trial court thereafter considered and denied the motion. (Respondent's Exhibit A at 457) Johnson's likelihood of success on appeal on this issue was remote. He has presented no evidence establishing that appellate counsel's failure to raise the issue on appeal was anything other than an exercise of sound appellate strategy. The claim in Ground 8 is denied.

For these reasons,

**IT IS HEREBY ORDERED** that Petitioner Jacob Johnson's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody [15] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Jacob Johnson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody [1] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Grant of 2254 Habeas Corpus and Release [16], Motion to Grant Habeas Corpus Petition [18], and Motion for Immediate Release [21] are **DENIED** as moot.

**IT IS FINALLY ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

A separate judgment will accompany this Memorandum and Order.

Dated this 11th day of June, 2018.

                                                        */s/ John A. Ross*
                                                        **JOHN A. ROSS**
                                                        **UNITED STATES DISTRICT JUDGE**